**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0344n.06**
**Filed: May 12, 2006**

**No. 06-5650**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SEDLEY ALLEY, | ) | |
| | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | |
| v. | ) | On Motion to Vacate from the |
| | ) | United States District Court for |
| GEORGE LITTLE, et. al. | ) | the Middle District of Tennessee |
| | ) | |
| *Defendants-Appellants*. | ) | |
| | ) | |
| | ) | |

**Before:** **BOGGS, Chief Judge; and RYAN and BATCHELDER, Circuit Judges**.

**BOGGS, Chief Judge.** Defendant Tennessee Commissioner of Corrections and others challenge the district court's grant of a preliminary injunction and order staying the execution, scheduled for 1:00 a.m. on May 17, 2006, of plaintiff Sedley Alley. Alley was convicted of kidnaping, rape, and first-degree murder and sentenced to death in 1987. We **VACATE** the injunction and stay.

**I**

On March 29, 2006, the Tennessee Supreme Court set Alley's execution date. On April 11, 2006, Alley filed what he denominated an action pursuant to 42 U.S.C. § 1983, challenging

No. 06-5650
Sedley Alley v. Ricky Bell

Tennessee's lethal injection protocol. The district court initially held the action in abeyance during the pendency of the United States Supreme Court's consideration of *Hill v. McDonough*, No. 05-8794 (U.S., argued Apr. 25, 2006). *Alley v. Little*, 2006 WL 1207611 (M.D. Tenn., May 2, 2006) The question taken up by the Court in *Hill* is whether § 1983 is a proper vehicle by which a death row inmate may bring a challenge to the protocol of chemicals typically used by states in lethal injection execution procedures.[1] Alley filed a motion on May 4, 2006, for a stay of execution pending the outcome of *Hill*. (Motion for Preliminary Injunction, No. 3:06-340, May 4, 2006) The motion noted that the Court's decision would determine whether Alley's complaint as to the constitutionality of the lethal injection protocol "may proceed under 42 U.S.C. § 1983 or should be considered a habeas corpus petition . . . ." (Motion for Preliminary Injunction, 1) Alley noted that the Court had issued a stay in Hill's case, which raised essentially the same challenge to the protocol. *See Hill v. Crosby*, 546 U.S. ___, 126 S.Ct. 1189 (Jan. 25, 2006). His motion noted that the Supreme Court and other courts, including the Eighth Circuit and the United States District Court for District of Columbia, had granted stays of execution in other cases, pending the outcome

---

[1] The parties in *Hill v. McDonough* agreed on the exact wording of the two questions presented to the Court:

> 1. Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the chemicals utilized for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254.

> 2. Whether, under this Court's decision in *Nelson v. Campbell*, 541 U.S. 637 (2004), a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983. (Brief for Petitioner, i; Brief for Respondent, i)

No. 06-5650
Sedley Alley v. Ricky Bell

of *Hill*. (Motion for Preliminary Injunction, 2, citing *Rutherford v. Crosby*, 546 U.S. ___, 126 S.Ct. 1191 (2006); *Taylor v. Crawford*, No. 06-1379 (8th Cir. 2006) (en banc); *Roane v. United States*, No. 05-2337 (D.D.C.))

In considering Alley's motion, the district court first asked whether it had subject-matter jurisdiction, noting that, "[w]ere the plaintiff's challenge to be converted to a second habeas petition, this court would lack jurisdiction over it and would be required to transfer it to the Sixth Circuit for appellate review." (Order of May 11, 2006, No. 3:06-0340, 3, *citing In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997); *In re Sapp*, 118 F.3d 460, 463 (6th Cir. 1997)) The district court determined that it must "await guidance from the Supreme Court before determining whether such conversion is appropriate in this case and, consequently, whether it has jurisdiction over the plaintiff's challenge." (Order of May 11, 2006, 3) The court concluded that it must therefore issue a stay pending the outcome in *Hill*.

Separately, the district court reasoned that the traditional four-factor analysis as to whether to grant a preliminary injunction also favored the issuance of a stay. *See Edward Rose & Sons,* 384 F.3d 258, 261 (6th Cir. 2004) (setting out the factors). The district court found that all four factors, including irreparable harm to the moving party, the relative absence of harm to other parties following an injunction, the quantum of public interest in granting the motion, and the likelihood of ultimate success on the merits, militated toward granting the stay. (Order of May 11, 2006, 4-6.)

The district court issued the stay sought by Alley. We now review.

**II**

We hold that the district court abused its discretion in issuing the preliminary injunction and stay. *See Lexmark Int'l Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532 (6th Cir. 2004) (noting standard of review for grants of preliminary injunctions).

First, we state that, regardless of a prediction as to the outcome in *Hill*, we will, *arguendo*, treat Alley's action as a properly filed § 1983 claim and that, even so understood, this suit affords no basis for the stay that has been granted. The nub of Alley's claim is that the protocol, as concocted and administered, is unconstitutional on the grounds that it is cruel and unusual punishment under the Eighth Amendment and otherwise and simultaneously violative of the Ninth Amendment. (Complaint, No. 3:06-cv-00340, Apr. 11, 2006, 1-2) That is not the law of the republic as it stands today. No federal court has found the lethal injection protocol as such to be unconstitutional. We will not do so today.

If we assume, as we do, that Alley may challenge the lethal injection chemical protocol through a § 1983 action, we then weigh the merits of the district court's stay, based on the reason furnished in its opinion. The court first states that the stay must be granted because the Supreme Court is considering whether this action can even be brought properly under § 1983. Such a view is a wrong as a matter of law. The Supreme Court's consideration of a procedural matter such as this can not freeze in place all actions in the lower federal courts under existing law. If the Supreme Court ultimately holds that this action should not be cognizable at all, obviously the injunctive relief of a stay would not be justified. On the other hand, if the Court were to hold that the case can properly be brought, in a procedural sense, it would place us exactly where we find ourselves now

by assuming it is proper. We thus obviate any justification for a stay based on the possibility of the Supreme Court's ruling as we assume it will.

Second, we note that the importance of the pendency of *Hill v. McDonough* to our case is far from clear or conventionally accepted. The Supreme Court, though possessing the power to do so, has not issued a nationwide stay of lethal injection executions until it hands down a decision in *Hill*. Fifteen executions, all by lethal injection, have taken place in the United States since the writ of certiorari was granted in *Hill* on January 25, 2006. Three have occurred since the April 26, 2006 oral arguments. The Supreme Court has specifically declined stays in several of these cases, even where the inmates have raised nearly identical claims regarding their states' lethal injection protocols to the one presented in our case. In *Donahue v. Bieghler*, 126 S.Ct. 1190 (2006), the Supreme Court acted on January 27, 2006, to *vacate* a stay that had been entered by the Seventh Circuit. Marvin Bieghler was executed the same day. The Court likewise denied a stay on January 31, 2006, in *Elizalde v. Livingston*, 126 S. Ct. 2006 (2006), and Jaime Elizalde was put to death the same day. The Court acted similarly in the case of the man most recently executed in the United States. In *Wilson v. Livingston*, 2006 WL 1174531 (U.S., May 4, 2006), the Court denied a stay, and Jackie Wilson was executed the same day. Given the Supreme Court's own pattern of conduct regarding cases in which inmates are raising claims like the one in our case, we cannot conclude that the Supreme Court has established any new precedent that would favor a stay of Alley's execution pending the outcome in *Hill*.

Third, we turn to the alternative basis the district court relies on, based on the traditional four-factor test for preliminary injunctions. We do not agree with the district court's conclusion as

to the test's application in Alley's case. The district court correctly found that Alley, the moving party, is threatened with irreparable harm. This interest must be weighed against the state's interest in carrying out punishment. The state's interest is not to be underestimated. The Supreme Court has instructed that the "State's interests in finality are compelling" and that the "powerful and legitimate interest in punishing the guilty" attaches to both "the State and the victims of crime alike." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (citations and internal quotations omitted) Even considering the countervailing interests of Alley and the state, the small likelihood of Alley's success on the merits ultimately decides the matter. That likelihood, such as it exists at all, is unsupported by current law, which offers no basis for finding lethal injection protocols unconstitutional. Moreover, since the Supreme Court is not even considering the constitutionality of the lethal injection protocol in *Hill*, the prospect of a change in that feature of existing jurisprudence is as speculative as any other claim about possible future changes in governing law. Such speculation does not impact our assessment as to the likelihood of Alley's success on the merits under existing law.

Fourth, we take note of the unnecessary delay with which Alley brought his challenge to Tennessee's lethal injection protocol. He was on notice as to both the particulars of the protocol and the availability of making a claim such as the one he now raises for several years before he filed his last-minute complaint. Another Tennessee death row inmate, Abu-Ali Abdur'Rahman, petitioned the state Commissioner of Correction to declare the lethal injection protocol unconstitutional in April 2002. *Abdur'Rahman v. Bredesen*, 181 S.W. 3d 292, 299-300 (Tenn. 2005) Alley's execution date was set on January 16, 2004, for June 3rd of that year, following the Supreme Court's denial

No. 06-5650
Sedley Alley v. Ricky Bell

of a writ of certiorari to review our court's decision not to grant habeas relief. *Alley v. Bell*, 540 U.S. 839 (2003); *State v. Alley*, No. M1991-00019-SC-DPE-DD (Tenn. Jan. 16, 2004). Lethal injection has been the only method of execution in Tennessee since 2000 for all death row inmates save those who affirmatively express a preference for electrocution. Tenn. Code Ann. § 40-23-114. Alley had ample time in which to express such a preference and/or file his current grievance. Instead, he waited until thirty-six days before his currently scheduled execution date.

Alley argues that his current claim would not have been ripe for judicial consideration had he filed it much earlier than the date on which he submitted his complaint. He notes that the Tennessee Supreme Court set his current date of execution on March 29, 2006. He points out further that his action, which he styled a motion made pursuant to Fed. R. Civ. P. 60(b), seeking relief from the district court's denial of his habeas petition, was until quite lately pending in the district court. He contends that he did not suffer an imminent (and therefore justiciable) threat of the harms associated with the lethal injection protocol until after the Tennessee Supreme Court took steps, following the district court's final disposal of the Rule 60(b) motion, to set the execution date of May 17, 2006. This can not be right. The threat of the grievous harms of lethal injection loomed at least since the establishment of the 2004 execution date. We have been cited no precedent, and our independent research has yielded none, where a claim such as the one Alley now raises has been rejected for lack of ripeness at any time following the setting of an initial execution date and following the denial of certiorari on initial federal habeas. *See Calderon*, 523 U.S. at 556 ("A State's interests in finality are compelling when a federal court of appeals issues a mandate denying

No. 06-5650
Sedley Alley v. Ricky Bell

federal habeas relief."). We find a passage from our opinion in *In re Sapp*, 118 F.3d 460, 464 (6th

Cir. 1997), sufficiently apposite to the case now before us to warrant quotation:

> Even were we to consider the merits of McQueen's claim, we would not permit his
> claim that death by electrocution constitutes cruel and unusual punishment in
> violation of the Eighth and Fourteenth Amendments. Petitioner has known of the
> possibility of execution for over fifteen years. It has been ten years since a Kentucky
> governor first signed a death warrant for his electrocution. The legal bases of such
> a challenge have been apparent for many years. . . . Even though, in petitioner's
> mind, every year or every day may bring new support for his arguments, the claims
> themselves have long been available, and have needlessly and inexcusably been
> withheld. Thus, equity would not permit the consideration of this claim for that
> reason alone, even if jurisdiction were otherwise proper. (internal citations omitted)

**III**

We **VACATE** the preliminary injunction and stay.